Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY SHABESTARI, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1)  Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| ALLETE, INC., BETHANY M. OWEN, SUSAN K. NESTEGARD, GEORGE G. GOLDFARB, JAMES J. HOOLIHAN, MADELEINE W. LUDLOW, CHARLES R. MATTHEWS, DOUGLAS C. NEVE, BARBARA A. NICK, ROBERT P. POWERS, and CHARLENE A. THOMAS, | (2)  Violation of § 20(a) of the Securities Exchange Act of 1934 |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Mary Shabestari ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against ALLETE, Inc. ("ALLETE" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

to sell the Company to a partnership led by the Canada Pension Plan Investment Board and Global Infrastructure Partners (together, the "Partnership"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a May 6, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the deal, the Partnership will acquire ALLETE for $67.00 per share in cash, or $6.2 billion including the assumption of debt.

3.     Thereafter, on June 20, 2024, the Company filed its Preliminary Proxy Statement on Schedule 14A with the United States Securities and Exchange Commission (the "SEC"). Thereafter, on June 21, 2024, the Company filed a Revised Preliminary Proxy Statement on Schedule PRER 14A with the SEC (together, the "Proxy Statement").

4.     The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own company shares, restricted stock units ("RSUs"), performance stock units ("PSUs"), and deferred stock units ("DSUs"), all of which are subject to accelerated vesting and conversion into merger consideration; and (b) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5.     The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Proxy

Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for ALLETE, provided by the Company to the Company's financial advisors, J.P. Morgan Securities ("JP Morgan") and Houlihan Lokey Capital, Inc. ("Houlihan Lokey"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by JP Morgan and Houlihan Lokey, and provided to the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## **PARTIES**

7.      Plaintiff is a citizen of Minnesota and, at all times relevant hereto, has been an ALLETE stockholder.

8.      Defendant ALLETE operates as an energy company. ALLETE is incorporated under the laws of the State of Minnesota and has its principal place of business at 30 West Superior Street, Duluth, MN 55802. Shares of ALLETE common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "ALE."

9.      Defendant Bethany M. Owen ("Owen") has been the Chair of the Board of Directors of the Company at all relevant times. In addition, Defendant Owen serves as the Company's President and Chief Executive Officer ("CEO").

10.      Defendant Susan K. Nestegard ("Nestegard") has been a director of the Company at all relevant times.

11.      Defendant George G. Goldfarb ("Goldfarb") has been a director of the Company at all relevant times.

12.     Defendant James J. Hoolihan ("Hoolihan") has been a director of the Company at all relevant times.

13.     Defendant Madeleine W. Ludlow ("Ludlow") has been a director of the Company at all relevant times.

14.     Defendant Charles R. Matthews ("Matthews") has been a director of the Company at all relevant times.

15.     Defendant Douglas C. Neve ("Neve") has been a director of the Company at all relevant times.

16.     Defendant Barbara A. Nick ("Nick") has been a director of the Company at all relevant times.

17.     Defendant Robert P. Powers ("Powers") has been a director of the Company at all relevant times.

18.     Defendant Charlene A. Thomas ("Thomas") has been a director of the Company at all relevant times.

19.     Defendants identified in ¶¶ 9-18 are collectively referred to as the "Individual Defendants."

20.     Non-Party Canada Pension Plan Investment Board invests in the contributors and beneficiaries to maximize investment returns.

21.     Non-Party Global Infrastructure Partners is an infrastructure investing firm that invests in the energy, transportation, water, and waste sectors.

22.     Non-Party Merger Sub is a subsidiary of the Partnership created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

26.    Defendant ALLETE operates as an energy company. The company operates through Regulated Operations, ALLETE Clean Energy, and Corporate and Other segments.

27.    The Company's most recent financial performance press release, revealing the Company's 2023 earnings, which preceded the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the February 20, 2024, press release announcing its 2023 Earnings, the Company highlighted such milestones as: earnings

of $4.30 per share on net income of $247.1 million and operating revenue of $1.9 billion, compared to 2022 which were $3.38 per share on net income of $189.3 million and operating revenue of $1.6 billion.

28.     Speaking on these positive results, CEO Defendant Owen commented on the Company's positive financial results as follows, "Our updated five-year capital expenditure plan of $4.3 billion reflects the tremendous growth opportunities at Minnesota Power. We've added approximately $1 billion to our previous plan, reflecting the significant investments in regulated renewable and transmission projects necessary to advance a clean-energy future and meet state carbon-free energy goals. By building on our successful strategic initiatives of 2023 and 2024 and refining our capex plan, we project that ALLETE will achieve our annual growth objective of 5 percent to 7 percent commencing in 2025, through our forecast period of 2028 and beyond. We are confident in our strong growth outlook supported by our robust pipeline of clean energy and transmission opportunities, a constructive regulatory environment, and our highly skilled employees."

29.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by ALLETE. Based upon these positive financial results and outlook, the Company is likely to have future success.

***The Flawed Sales Process***

30.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to the Partnership.

31.     The Proxy Statement fails to disclose how the updated projections, created by Company Management on or around January 24, 2024 in relation to the Company's 2023 results,

differed from the set of projections that were originally prepared by Company Management on or around October 23, 2023.

32.     The Proxy Statement fails to provide an explanation regarding the Board's decision to hire two financial advisors, JP Morgan and Houlihan Lokey, to provide financial analyses in connection with the Proposed Transaction.

33.     In addition, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and the Partnership and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Proxy Statement, if so in all specific manners.

34.     The Proxy Statement fails to disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

35.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

36.     On May 6, 2024, ALLETE and the Partnership issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> DULUTH, Minn.--(BUSINESS WIRE)--May 6, 2024-- ALLETE, Inc. (NYSE: ALE) and a partnership led by Canada Pension Plan Investment Board ("CPP Investments") and Global Infrastructure Partners ("GIP"), (the "partnership"), today jointly announced that they have entered into a definitive agreement under which the partnership will acquire ALLETE for $67.00 per share in cash, or $6.2 billion including the assumption of debt.

> ALLETE is a leading energy company and provider of safe, reliable, and competitively priced energy with a national footprint. Together, ALLETE and its family of companies, which includes regulated utilities and renewable energy companies, are focused on driving the clean-energy transition by expanding renewables, reducing carbon, enhancing grid resiliency, and driving innovation.

> "Our 'Sustainability-in-Action' strategy has secured ALLETE's place as a clean-energy leader. Through this transaction with CPP Investments and GIP, we will have access to the capital we need while keeping our customers, communities and

co-workers at the forefront of all that we do, with continuity of our day-to-day operations, strategy and shared purpose and values," said ALLETE Chair, President, and Chief Executive Officer Bethany Owen. "CPP Investments and GIP have a successful track record of long-term partnerships with infrastructure businesses, and they recognize the important role our ALLETE companies serve in our communities as well as our nation's energy future. Together, we will continue to invest in the clean-energy transition and build on our 100 plus-year history of providing safe, reliable, affordable energy to our customers."

CPP Investments and GIP are premier, well-resourced infrastructure investors at a global scale with deep industry expertise and long-term outlooks. Together, they bring over four decades of experience investing in large-scale infrastructure businesses across sectors to support sustainable, long-term growth. Both CPP Investments and GIP pride themselves on their responsible investment approach, which is centered on delivering value to their organizations and the communities in which they operate.

Owen continued, "Our 'Sustainability-in-Action' strategy will require focused execution and significant capital. Transitioning to a private company with these strong partners will not only limit our exposure to volatile financial markets, it also will ensure ALLETE has access to the significant capital needed for our planned investments now and over the long term. Importantly, CPP Investments and GIP are aligned with ALLETE's values of safety, integrity, planet and people. They also recognize the importance of our employees and our ties to the communities we serve and in which we operate. To that end, we are proud to remain locally managed as we enter this next chapter as committed as ever to our customers, our communities and our employees. I look forward to all we will achieve together."

"ALLETE's management team has done an excellent job leading the company toward a truly sustainable clean- energy future. Together with GIP, we look forward to bringing our sector expertise and long-term capital to support ALLETE's strong management team as they continue to deliver safe, reliable, affordable energy services to their customers," said James Bryce, Managing Director and Global Head of Infrastructure, CPP Investments. "ALLETE is at the forefront of the clean energy transition and we are thrilled to support the delivery of the company's 'Sustainability-in-Action' strategy, which we believe will generate substantial value both for ALLETE's customers and CPP contributors and beneficiaries."

"We are excited to work with Bethany Owen and the full ALLETE team as they continue to supply affordable and reliable energy services," said Bayo Ogunlesi, GIP's Chairman and Chief Executive Officer. "GIP, alongside CPP Investments, look forward to partnering to provide ALLETE with additional capital so they can continue to decarbonize their business to benefit the customers and communities they serve. Bringing together ALLETE, with its demonstrated commitment to clean energy, with GIP, one of the world's premier developers of renewable power, furthers our commitment to serve growing market needs for affordable, carbon-free and more secure sources of energy."

**Commitment to Employees, Customers and Communities**

Under the terms of the merger agreement governing the proposed transaction, several commitments have been made by CPP Investments and GIP to align with ALLETE's shared purpose, culture and values, including:

- **Retaining Workforce:** The agreement provides commitments with respect to workforce retention, as well as maintaining compensation levels and benefits programs. The agreement also honors union contracts including our strong partnership with the International Brotherhood of Electrical Workers.

- **Maintaining Current Headquarters and Leadership**: ALLETE's Minnesota Power and Superior Water, Light and Power (SWL&P) will continue as independently operated, locally managed, regulated utilities. Bethany Owen will continue as Chief Executive Officer, and the current management team will continue to lead ALLETE and remain as the primary points of contact for customers, regulators and other stakeholders. ALLETE will continue to be headquartered in Duluth, Minnesota.

- **Contributing to Community:** ALLETE and its family of businesses and the Minnesota Power Foundation will continue to make economic and charitable contributions in its service territories to support vibrant and sustainable communities, close opportunity gaps, and help people of all ages live with purpose and passion. ALLETE will continue to invest corporate resources and employee volunteer hours to help build thriving communities.
  In addition, the transaction will support existing commitments made by ALLETE such as:

- **ALLETE's Clean-Energy Goals:** All ALLETE companies will remain committed to advancing a clean-energy future, through solar, wind, storage and transmission infrastructure and achieving carbon-free goals of the respective states in which the companies operate.

- **Retail or Municipal Rates for Utility Customers:** Following the close of the acquisition, Minnesota Power and SWL&P will continue to be regulated by the Minnesota Public Utilities Commission (MPUC), the Public Service Commission of Wisconsin (PSCW) and the Federal Energy Regulatory Commission (FERC). The acquisition is not expected to impact retail or municipal rates for utility customers.

**Terms, Approvals and Timing**

In connection with the merger, CPP Investments and GIP will acquire all of the outstanding common shares of ALLETE for $67.00 per share in cash representing an enterprise value of approximately $6.2 billion, including ALLETE's net debt. This represents a premium of approximately 19.1% to ALLETE's closing share price on December 4, 2023, the date prior to a media article reporting that ALLETE was exploring a sale. The consideration also represents a 22.1% premium to the 30-day volume weighted average share price prior to that date.

The acquisition was unanimously approved by ALLETE's Board of Directors and is expected to close in mid-2025, subject to the approval of ALLETE's shareholders, the receipt of regulatory approvals, including by the MPUC, PSCW and FERC, and other customary closing conditions. Dividends payable to ALLETE shareholders are expected to continue in the ordinary course until the closing, subject to approval by ALLETE's Board of Directors. Upon completion of the acquisition, ALLETE's shares will no longer trade on the New York Stock Exchange, and ALLETE will become a private company.

*Potential Conflicts of Interest*

37.     The breakdown of the benefits of the deal indicates that ALLETE insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of ALLETE.

38.     In addition, Company insiders currently own company shares, RSUs, PSUs, and DSUs, some of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, and converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | Shares Beneficially Owned[1] | Cash Merger Consideration for Shares Beneficially Owned |
|---|---|---|
| **Non-Employee Directors** | | |
| George G. Goldfarb | 6,580 | $440,860 |
| James J. Hoolihan | 16,326 | $1,093,842 |
| Madeleine W. Ludlow | 19,093 | $1,279,231 |
| Charles R. Matthews | 647 | $43,349 |
| Susan K. Nestegard | 686 | $45,962 |
| Douglas C. Neve | 11,593 | $776,731 |
| Barbara A. Nick | 11,425 | $765,475 |
| Robert P. Powers | 664 | $44,488 |
| Charlene A. Thomas | 6,620 | $443,540 |
| **Executive Officers** | | |
| Bethany M. Owen | 27,470 | $1,840,490 |
| Steven W. Morris | 10,940 | $732,980 |
| Nicole R. Johnson | 10,974 | $735,258 |
| Joshua J. Skelton | 13,676 | $916,292 |
| Patrick L. Cutshall | 9,264 | $620,688 |
| Julie L. Padilla | 0 | $0 |

Margaret A. Thickens[2]                                        5,764                    $386,188

| Name | RSUs | | PSAs | | | DSUs | |
| | Number | Value–Total[1] | Number | Value–Total | Value–Paid at the Assumed Effective Time[2] | Number[3] | Value–Total |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Non-Employee Directors** | | | | | | | |
| George G. Goldfarb | — | — | — | — | — | 16,888 | $1,131,503 |
| James J. Hoolihan | — | — | — | — | — | 10,837 | $726,066 |
| Madeleine W. Ludlow | — | — | — | — | — | 4,920 | $329,637 |
| Charles R. Matthews | — | — | — | — | — | 5,092 | $341,140 |
| Susan K. Nestegard | — | — | — | — | — | 11,814 | $791,523 |
| Douglas C. Neve | — | — | — | — | — | 16,940 | $1,135,013 |
| Barbara A. Nick | — | — | — | — | — | — | — |
| Robert P. Powers | — | — | — | — | — | 12,306 | $824,489 |
| Charlene A. Thomas | — | — | — | — | — | — | — |
| **Executive Officers[4]** | | | | | | | |
| Bethany M. Owen | 13,599 | $911,117 | 43,192 | $2,893,894 | $1,348,536 | — | — |
| Steven W. Morris | 4,603 | $308,386 | 12,769 | $855,501 | $327,063 | — | — |
| Nicole R. Johnson | 3,662 | $245,348 | 11,513 | $771,378 | $349,794 | — | — |
| Joshua J. Skelton | 2,608 | $174,714 | 7,612 | $510,037 | $242,776 | — | — |
| Patrick L. Cutshall | 2,617 | $175,313 | 7,262 | $486,523 | $223,834 | — | — |
| Julie L. Padilla | 851 | $57,047 | 2,553 | $171,073 | $23,760 | — | — |

39.     In addition, employment agreements with certain ALLETE executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff. The golden parachute compensation is as follows:

**Golden Parachute Compensation**

| Name[1] | Cash[2] | Equity[3] | Perquisites/Benefits[4] | Total |
|---|---|---|---|---|
| Bethany M. Owen | $5,327,954 | $1,728,168 | $25,000 | $7,081,122 |
| Steven W. Morris | $2,351,977 | $455,557 | $25,000 | $2,832,534 |
| Nicole R. Johnson | $1,628,022 | $452,022 | $25,000 | $2,105,044 |
| Joshua J. Skelton | $1,328,053 | $315,573 | $25,000 | $1,668,626 |

40.     The Proxy Statement also fails to disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

41.     This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.     Thus, while the Proposed Transaction is not in the best interests of ALLETE, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

43.     The ALLETE Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

44.     The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

a. How the updated projections, created by Company Management on or around January 24, 2024 in relation to the Company's 2023 results, differed from the set of projections that were originally prepared by Company Management on or around October 23, 2023;

b. An explanation regarding the Board's decision to hire two financial advisors, JP Morgan and Houlihan Lokey, to provide financial analyses in connection with the Proposed Transaction;

c. Whether the confidentiality agreements entered into by the Company with the Partnership differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including the Partnership, would fall away; and

e. The totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

45.     This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning ALLETE's Financial Projections*

46.     The Proxy Statement fails to provide material information concerning financial projections for ALLETE provided by ALLETE management to the Board, JP Morgan, and Houlihan Lokey and relied upon by JP Morgan and Houlihan Lokey in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

47.     Notably the Proxy Statement reveals that as part of its analyses, JP Morgan reviewed, "certain internal financial analyses and forecasts prepared by the management of the Company relating to its business."

48.     Notably the Proxy Statement reveals that as part of its analyses, Houlihan Lokey reviewed, "certain information relating to the historical, current and future operations, financial condition and prospects of the Company made available to us by the Company, including financial projections prepared by the management of the Company relating to the Company."

49.     Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that ALLETE management provided to the Board, JP Morgan, and Houlihan Lokey. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view

of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

50.     With regard to the *Forward-Looking Financial Information* provided by ALLETE Management, the Proxy Statement fails to disclose material line items for the following metrics:

> a.  Revenues, including all underlying inputs, metrics, and assumptions used to calculate same;
>
> b.  EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same;
>
> c.  Net Income Attributable to the Company, including all underlying inputs, metrics, and assumptions used to calculate same;
>
> d.  Earnings Per Share, including all underlying inputs, metrics, and assumptions used to calculate same; and
>
> e.  Cash Capital Expenditures, including all underlying inputs, metrics, and assumptions used to calculate same.

51.     The Proxy Statement fails to disclose how the updated projections, created by Company Management on or around January 24, 2024 in relation to the Company's 2023 results, differed from the set of projections that were originally prepared by Company Management on or around October 23, 2023.

52.     The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

53.     This information is necessary to provide Plaintiff in her capacity as a Company stockholder with a complete and accurate picture of the sales process and its fairness.  Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

54. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of JP Morgan and Houlihan Lokey's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by JP Morgan*

55. In the Proxy Statement, JP Morgan describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

56. With respect to the *Public Trading Multiples Analysis*, the Proxy Statement fails to disclose:

a. The specific data analyzed for each of the selected publicly traded companies;

b. The inputs, metrics, and assumptions used to determine the 2024E EPS multiples range of 14.0x to 17.5x utilized;

c. The inputs, metrics, and assumptions used to determine the 2025E EPS multiples range of 13.5x to 16.5x utilized;

d. The inputs, metrics, and assumptions used to determine the FV/ 2024E EBITDA multiples range of 10.0x to 14.0x utilized; and

     e. The inputs, metrics, and assumptions used to determine the FV/ 2025E EBITDA multiples range of 9.5x to 11.5x utilized.

57.    With respect to the *Selected Transactions Analysis*, the Proxy Statement fails to disclose:

     a. The date of which each selected transaction was consummated;

     b. The aggregate value of each selected transaction;

     c. The LTM P/E multiple for each of the target companies in each selected transaction; and

     d. The inputs, metrics, and assumptions used to determine the Price/ 2023 EPS multiple range of 17.5x to 30.0x utilized.

58.    Regarding the *Discounted Cash Flow Analysis*, disclose:

     a. The inputs, metrics, and assumptions used to determine the terminal growth rate of 1.50% to 2.0% utilized;

     b. The inputs, metrics, and assumptions used to determine discount rate range of 6.0% to 6.50% utilized; and

     c. The Company's weighted average cost of capital utilized.

59.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

60.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public ALLETE

stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Houlihan Lokey*

61.     In the Proxy Statement, Houlihan Lokey describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

62.     With respect to the *Selected Companies Analysis*, the Proxy Statement fails to disclose:

a.   The metrics observed for each of the selected companies analyzed;

b.   The inputs, metrics, and assumptions used to determine the Enterprise Value / CY 2024E EBITDA low, high, median, and mean multiples utilized;

c.   The inputs, metrics, and assumptions used to determine the Enterprise Value / CY 2025E EBITDA low, high, median, and mean multiples utilized;

d.   The inputs, metrics, and assumptions used to determine the Share Price / CY 2024E Earnings low, high, median, and mean multiples utilized;

e.   The inputs, metrics, and assumptions used to determine the Share Price / CY 2025E Earnings low, high, median, and mean multiples utilized;

f.   The inputs, metrics, and assumptions used to determine the Enterprise Value / CY 2024E EBITDA multiples range of 11.0x to 12.0x utilized;

g.  The inputs, metrics, and assumptions used to determine the Enterprise Value / CY 2025E EBITDA multiples range of 9.5x to 10.5x utilized;

h.  The inputs, metrics, and assumptions used to determine the Share Price / CY 2024E Earnings multiples range of 13.5x to 16.5x utilized; and

i.  The inputs, metrics, and assumptions used to determine the Share Price / CY 2024E Earnings multiples range of 11.5x to 14.5x utilized.

63.  With respect to the *Selected Transactions Analysis*, the Proxy Statement fails to disclose:

a.  The date each selected transaction was consummated;

b.  The aggregate value of each selected transaction;

c.  The inputs, metrics, and assumptions used to determine the Transaction Value / LTM EBITDA low, high, median, and mean multiples utilized; and

d.  The inputs, metrics, and assumptions used to determine the Transaction Value / LTM EBITDA multiples range of 12.0x to 13.0x utilized.

64.  With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:

a.  The inputs, metrics, and assumptions used to determine the terminal values multiples range of 10.0x to 11.0x utilized;

b.  The inputs, metrics, and assumptions used to determine the discount rates range of 10.0% to 11.0% utilized; and

c.  The Company's weighted average cost of capital utilized.

65.     With respect to the *Sum-of-the-Parts Analysis*, the Proxy Statement fails to disclose:

a.  The inputs, metrics, and assumptions used to determine the selected multiples range of 14.5x to 17.5x applied to the estimated net income attributable to the Company resulting from the Company's utility operations segment for the calendar year ending December 31, 2024;

b.  The inputs, metrics, and assumptions used to determine the selected multiples range of 13.5x to 16.5x applied to the estimated net income attributable to the Company resulting from the Company's utility operations segment for the calendar year ending December 31, 2025;

c.  The inputs, metrics, and assumptions used to determine the selected multiples range of 8.0x to 10.0x applied to the estimated EBITDA for the calendar year ending December 31, 2042 attributable to the renewable platform segment; and

d.  The inputs, metrics, and assumptions used to determine the discount rates ranging from 11.0% to 13.0% utilized.

66.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

67.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public ALLETE

stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

68.    Plaintiff repeats all previous allegations as if set forth in full herein.

69.    Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

70.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

71.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

72.     The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

73.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

74.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

75.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

76.     Plaintiff repeats all previous allegations as if set forth in full herein.

77.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and

Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

78.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement; and nevertheless, approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

79.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of ALLETE's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

80.     The Individual Defendants acted as controlling persons of ALLETE within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the

Individual Defendants had the power and authority to cause ALLETE to engage in the wrongful conduct complained of herein. The Individual Defendants controlled ALLETE and all of its employees.  As alleged above, ALLETE is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 1, 2024          **BRODSKY & SMITH**

By: *Evan J. Smith*

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*